IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


RANDY DEAN MOORE,

                Plaintiff

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

Civil No. 08-759-TC

FINDINGS AND
RECOMMENDATION

Coffin, Magistrate Judge:

      Plaintiff Randy Dean Moore ("Moore") seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §

405(g).

      For the following reasons, I recommend the Commissioner's decision be AFFIRMED.

.

## PROCEDURAL BACKGROUND

Moore applied for DIB on July 28, 2005,  alleging disability since June 30, 2003[1] (Tr. 73)[2],

due to "tinnitus, hyperacusis, headache, loss of concentration and focus, anxiety/stress/ nervousness,

depression, insomnia/ poor sleep quality," mood swings, plantar facitis, and joint injuries. Tr. 119.

The Commissioner denied Moore's application initially and upon reconsideration. Tr. 58-65. An

ALJ held a hearing on October 25, 2007 (Tr. 519-50), and found Moore not disabled on November

17, 2007. Tr. 16-29. The Appeals Council accepted additional evidence into the record (Tr. 10), but

denied review on May 2, 2008 (Tr. 7), making the ALJ's decision the Commissioner's final decision.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*,

482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines

if the claimant has "a severe medically determinable physical or mental impairment" that meets the

twelve month duration requirement. 20 C.F.R. § 404.1509; 404.1520(a)(4)(ii). If the claimant does

not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment medically meets or equals

---

[1]Moore submits, without explanation or citation to the transcript, that he amended his onset date at his hearing to December 31, 2003. Pl.'s Opening Br. 2. The hearing transcript shows no such change. Tr. 521-50. The ALJ did not accept this change (Tr. 16), and the Commissioner does not concede it. Def.'s Br. 3. The record before this court shows that Moore's alleged onset date remains June 30, 2003.

[2]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 22, 2008 (Docket # 9).

2 - FINDINGS AND RECOMMENDATION

a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ determines that the impairment meets or equals a listed impairment, the claimant is disabled and the sequential analysis ends.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). This evaluation includes assessment of the claimant's statements regarding his impairments. 20 C.F.R. § 404.1545(a)(3). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566,

3 - FINDINGS AND RECOMMENDATION

404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found that Moore had not engaged in substantial gainful activity since his alleged onset date of June 30, 2003. Tr. 18. The ALJ found Moore's tinnitus "severe" at step two, but found his headaches, sleep apnea, back and shoulder joint pain, plantar fasciitis, gout, depression, and anxiety non-severe. *Id.*

At step three, the ALJ found that Moore's impairment did not meet or equal a listing. The ALJ subsequently found that Moore retained the RFC to perform medium exertional work with a "communicative non-exertional limitation. Tr. 23. At step four, the ALJ found that Moore could perform his past relevant work as a parks technician. Tr. 29. The ALJ therefore found Moore not disabled at any time through the date of his decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

4 - FINDINGS AND RECOMMENDATION

## DISCUSSION

Moore challenges the ALJ's step two findings, as well as the ALJ's evaluation of Moore's credibility, the medical evidence, and lay witness testimony.

## I.      Credibility

The ALJ found Moore not credible at several instances in his decision. Tr. 25-27. Moore's credibility challenge, made in two sentences, now asserts that Moore improperly rejected his testimony for "the same general reasons as discussed above" in his briefing. Pl.'s Opening Br., 21. Moore does not explain this assertion, but adds that the ALJ failed to account for the context of his statement and erroneously ignored other statements. *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1995). Moore does not identify the statements he claims were erroneously assessed, or explain the manner in which the ALJ erred.

### A.      Credibility Standards

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ

5 - FINDINGS AND RECOMMENDATION

ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding

symptoms by the claimant. *Id.* Once a claimant establishes an impairment, the ALJ may not,

however, make a negative credibility finding "solely because" the claimant's symptom testimony "is

not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.    Analysis**

The ALJ found Moore not credible based upon his activities of daily living, his minimal

medical treatment, and his work history.

**a.    Activities of Daily Living**

The ALJ discussed Moore's activities of daily living in some detail. The ALJ first noted that

Moore completed college courses and completed a landscape technician certification test while he

was allegedly disabled. Tr. 25. The ALJ also noted that Moore reported daily gardening, as well as

landscape work and selling goods weekly at a farmer's market. Tr. 26. Finally, the ALJ noted

Moore's report of hunting and archery, as well as walking and hiking in hilly terrain in the course

of hunting. *Id.*

The ALJ's credibility analysis may point to a claimant's activities of daily living that are

inconsistent with the claimant's allegation of disability. *Lingenfelter*, 504 F.3d 1040; *Smolen*, 80

F.3d at 1284. The record shows that Moore reported gardening, hunting, and selling vegetables at

the Saturday market to examining psychologist Dr. Clausel. Tr. 333. Moore also testified regarding

his gardening and hunting activities at his hearing before the ALJ. Tr. 539-40. The ALJ's citations

are based upon the record and therefore should be affirmed.

Moore also asserts that the ALJ took his statements out of "context." Pl.'s Opening Br., 21.

However, Moore's indicated citation gives no standard for the "context" of daily activities. Instead,

6 - FINDINGS AND RECOMMENDATION

Moore's citation reiterates that the ALJ must provide clear and convincing reasons for rejecting a claimant's testimony, and reaffirms that an ALJ may find a claimant not credible based upon inconsistencies between the claimant's activities of daily living and his claimed limitations. *Reddick*, 157 F.3d at 722. If the claimant shows that his condition is characterized by periods of exacerbation and remission, the ALJ may consider this in evaluating a claimant's activities. *Id.* Moore makes no effort to explain how this standard applies to the activities cited by the ALJ, nor did Moore testify that his symptoms wax and wane. The ALJ's reasoning should therefore be affirmed.

### b. Minimal Medical Treatment

The ALJ also noted that Moore received little or no medical care during most of the period he alleges disability, which is between June 30, 2003, and December 31, 2008. Tr. 19. The ALJ first noted that "most of" Moore's medical records were produced in 2007. *Id.* The ALJ then found that Moore had one physician visit, with his otolaryngologist, in 2002, three months of physical therapy addressing his right shoulder in 2003, and five visits with his treating physician between January 2002 and March 2003. *Id.* Finally, the ALJ noted that Moore had no physician visits in 2004. Tr. 19-20. The record supports this finding. Tr. 314-22, 385-88, 406.

The ALJ's credibility analysis may consider that a claimant sought minimal medical treatment without explanation. *Smolen*, 80 F. 3d at 1280. Moore consistently sought care for his tinnitus throughout the period in question, and the ALJ found that impairment severe. Regarding his other impairments, the record supports the ALJ's finding that he sought minimal care. The visits cited above addressed routine heathcare issues and right shoulder pain of limited duration. The ALJ appropriately considered that Moore had minimal medical treatment for impairments other than his tinnitus. This finding should therefore be affirmed.

7 - FINDINGS AND RECOMMENDATION

### c.    Work History

The ALJ found Moore's allegation of disability not credible because Moore ceased working on his alleged onset date due to an economic layoff rather than a change in his ability to function in the workplace due to impairments. Tr. 25. The ALJ may consider a claimant's work history in his credibility analysis. *Smolen*, 80 F.3d at 1284. Moore's testimony supports that the ALJ's finding that he was laid off for reasons unrelated to his alleged disability. Tr. 527. The ALJ's reasoning that Moore did not stop working due to alleged disability should therefore be affirmed.

### C.    Credibility Conclusion

In summary, the ALJ properly found Moore not credible. Further, Moore makes no effort to explain the ALJ's alleged error. The ALJ's findings are based upon the record and the correct legal standards and should therefore be affirmed.

## II.    The ALJ's Step Two Findings

Moore argues that the ALJ should have found his headaches, left knee impairment, right shoulder impairment, sleep apnea, and mental health impairments "severe" at step two in the sequential proceedings.

### A.    Standards

At step two, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509. However, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2). When an ALJ considers a claimant's impairments beyond step two in the

sequential proceedings, omission at step two may be inconsequential. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**B.    Analysis**

**a.    Headaches**

The ALJ found Moore's reports of headaches "entirely anecdotal." Tr. 18. The record shows that Moore complained of headache on one occasion to treating physician Dr. Bump on February 11, 1998 (Tr. 480), and did not complain of headaches again until he saw examining physician Dr. Hoffman on September 20, 2005.  Tr. 327.  Neurologist Dr. Falcon diagnosed headache with migraine features on October 8, 2007 (Tr. 485) and Moore subsequently complained of headache to Dr. Bump on October 31, 2007.  Tr. 507.

Drs. Bump and Falcon based their analysis of Moore's headaches upon Moore's self-reports. The ALJ may reject physician opinions predicated upon the self-reports of a claimant found not credible. *Tonapetyan v. Halter*, 247 F.3d 1144, 1149 (9th Cir. 2001).  Moore additionally shows no work-related limitations stemming from his alleged headaches.  For both these reasons the ALJ's finding that Moore's headaches should be affirmed.

**b.    Left Knee Impairment**

The ALJ made no findings regarding Moore's left knee.  Moore now concedes[3] that the record contains no evidence to support his allegation of left knee pain, but asserts that the ALJ should have developed the record regarding this impairment. Pl.'s Opening Br., 19.

Moore specifically claims that examining physician Dr. Hoffman's evaluation was

---

[3]This concession is erroneous; as discussed the medical record shows Moore's reports regarding his left knee pain and associated clinical findings.

9 - FINDINGS AND RECOMMENDATION

incomplete because Dr. Hoffman "did not perform any specific testing to identify potential problems with Moore's left knee." Pl.'s Opening Br. 19. The record contradicts this assertion. Dr. Hoffman noted Moore's report of left knee pain stemming from a childhood riding injury, and that Moore reported this pain is worse when he is walking on hard surfaces. Tr. 325. Dr. Hoffman's examination showed normal strength at Moore's hips, knees, and ankles. Tr. 326. Dr. Hoffman also measured Moore's bilateral knee flexion, and found that both legs flexed to 150 degrees. Tr. 328. Finally, Dr. Hoffman diagnosed mild degenerative joint disease, but did not specify that this condition affected Moore's left knee. Tr. 327. Moore's submission regarding Dr. Hoffman's allegedly incomplete examination is not based upon the record and should not be sustained.

Further, the ALJ's duty to develop the record is triggered when ambiguities arise. *See Armstrong v. Chater*, 160 F.3d 587, 589 (9th Cir. 1988) (ordering the ALJ to develop the record when a claimant's onset date is uncertain). Moore points to no ambiguities in the record regarding his left knee. The ALJ had no duty to develop the record regarding Moore's left knee pain.

    **c.**    **Right Shoulder Impairment**

Moore asserts that the ALJ should have found his right shoulder impairment severe. Pl.'s Opening Br. 19. The ALJ found Moore's complaints of bilateral shoulder pain non-severe because the medical record did not show "severity." Tr. 19. The ALJ specifically noted that evaluation of Moore's bilateral shoulder functioning after physical therapy showed full strength and range of motion. *Id.* The ALJ also noted that Moore complained to treating physician Dr. Bump of left shoulder pain, but then received physical therapy for right shoulder pain. *Id.*

The record shows that Dr. Bump noted Moore's complaint of *left* shoulder pain, with unknown etiology, on March 16, 2007. Tr. 381. Dr. Bump noted Moore's complaint of right

10 - FINDINGS AND RECOMMENDATION

shoulder pain on April 11, 2007, and stated that he could not exclude rotator cuff tear or injury. Tr. 379. Moore received physical therapy for decreased range of motion in his right shoulder between June 26, 2007, and August 21, 2007. Tr. 434-447. The record shows no subsequent treatment for shoulder pain. Moore therefore fails to establish that his shoulder pain, in either his right or left shoulder, resulted in an impairment that lasted, or was expect to last more than twelve months. An impairment must last twelve months to be found severe. 20 C.F.R. § 404.1509. Therefore, the ALJ appropriately found Moore's bilateral shoulder pain non-severe. This finding should be affirmed.

### d.    Sleep Apnea

Moore also alleges that the ALJ incorrectly found that his sleep apnea was non-severe because it resolved with treatment. Pl.'s Opening Br., 19. Moore asserts that he could not adjust to wearing his sleep apnea mask after three weeks of treatment, and that Moore reported that he was continuing to have apnea events despite wearing the CPAP treatment device. Id. at 20. Moore also asserts that the ALJ ignored the opinion of his treating physician, Dr. Winde regarding the efficacy of his sleep apnea treatment. Id.

The ALJ found that the record shows that Moore's sleep apnea is "well controlled with the use of a CPAP machine." Tr. 21. The ALJ also found no functional limitations resulting from Moore's sleep apnea, and therefore found it non-severe. Id.

### i.    Dr. Winde's Treatment Notes

Moore sought treatment for sleep apnea from specialist Dr. Winde on June 5, 2007. Tr. 427-28. Dr. Winde diagnosed "severe obstructive sleep apnea with severe oxygen desaturation" and prescribed a CPAP machine. Tr. 428. A second sleep study on June 8, 2007, showed "successful CPAP trial." Tr. 425. On September 4, 2007, Dr. Winde conducted a third sleep study, without a

CPAP machine, which showed "significant sleep fragmentation with a plethora of leg movements." Tr. 482. Dr. Winde suggested that Moore continue his CPAP therapy and consider obtaining a mouthpiece or surgical intervention, as well as weight reduction. Tr. 482.

The record thus supports the ALJ's finding that Moore's sleep apnea resolved with use of the CPAP machine.

Moore finally contends that the ALJ "ignored the bulk of Dr. Winde's opinion" regarding Moore's sleep apnea. Pl.'s Opening Br. 20. To the contrary, the ALJ discussed each of Moore's three visits with Dr. Winde. Tr. 21. This assertion is not based upon the record and should be rejected.

### ii.    Additional Evidence Accepted by the Appeals Council

On January 3, 2008, after the ALJ issued his decision, Dr. Winde wrote a letter "in response to a visit from Mr. Moore . . . saying that he was denied disability." Tr. 506. Dr. Winde wrote that Moore showed him the ALJ's statement that his sleep apnea was "not severe." *Id.* Dr. Winde continued:

> I would note that sleep apnea is a very severe disorder in the case of Mr. Moore and although we are attempting to control it, it is causing signficant problems with his activities of daily living and without perfect control and very hard work on his part he is not able to maintain adequate daytime alertness. This is a problem with many people in the United States . . .

Tr. 506. Dr. Winde subsequently cited statistics showing that 24% of the U.S. population experiences sleep apnea, and concluded by stating that studies "clearly show the impact and severity of this disease on activities of daily living" and that he "would beg to differ that sleep apnea is not a mild or even moderate disease process."

The Appeals Council accepted this letter into the record. Tr. 10. The reviewing court may

12 - FINDINGS AND RECOMMENDATION

consider additional evidence submitted to the Appeals Council when that evidence is (1) new and not merely cumulative of what is already in the record; (2) material; and (3) the claimant provides good cause for failing to submit such evidence earlier. 42 U.S.C. §§ 405(g); *Mayes v. Massinari*, 276 F.3d 453, 462-63 (9th Cir. 2001). Moore makes no argument regarding this court's obligation to address Dr. Winde's January 3, 2008 under this standard. Further, Dr. Winde's letter does not show limitations specific to Moore, nor is it supported by clinical notes or findings. A physician's opinion unsupported by clinical notes or findings may be rejected. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Therefore, Dr. Winde's January 2, 2008, letter does not establish that Moore suffered work-related effects related to his sleep apnea.

For all of these reasons, the ALJ's findings regarding Moore's sleep apnea should be affirmed.

### e.    Mental Health Issues and Dr. Clausen's Opinion

Finally, Moore asserts that the ALJ incorrectly found his alleged mental impairments non-severe. Pl.'s Opening Br. 21. Here Moore points to examining psychologist Dr. Clausel's November 1, 2006, evaluation. *Id.* Moore also separately asserts that the ALJ improperly rejected Dr. Clausel's opinion because the ALJ "ignored or distorted" his opinion. Pl.'s Opening Br. 21. Both submissions are considered concurrently.

Dr. Clausel evaluated Moore for Disability Determination Services ("DDS")[4] on September 27, 2005, and again on November 1, 2006. Tr. 330-34, 415-23. On November 1, 2006, Dr. Clausel administered testing, including an intelligence test, personality assessment inventory, Rorsarch

---

[4] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

inkblot tests, and a clinical interview. Tr. 418. The ALJ discussed both the September 2005 and November 2006 opinions. Tr. 21-22. The ALJ accepted Dr. Clausel's September 2005 opinion. Tr. 21. However, the ALJ rejected Dr. Clausel's November 2006 opinion for several reasons, which Moore now challenges. Tr. 22.

The ALJ first rejected portions of Dr. Clausel's opinion that Dr. Clausel based upon Moore's self reporting. Tr. 22. The ALJ specifically found that the record does not support Moore's reports to Dr. Clausel that he requires a flexible work schedule and that gardening caused his dermatitis. *Id.* The ALJ also rejected Dr. Clausel's global assessment of functioning ("GAF") analysis to the extent it was based upon Moore's reporting. *Id.* As noted, the ALJ may reject a medical source opinion predicated upon reports of a claimant properly found not credible. *Tonapetyan*, 242 F.3d at 1149. These findings should therefore be affirmed.

The ALJ also found Dr. Clausel's GAF analysis contradicted by his concluding opinion that Moore could "prosper" at an academic, research, or highly skilled technical. Tr. 22. The ALJ may reject physician opinions that are contradictory or unsupported by clinical notes or findings. *See Bayliss*, 427 F.3d at 1216. This reasoning should be affirmed.

The ALJ additionally noted Dr. Clausel's finding that Moore may have exaggerated his symptoms. Tr. 22. The record shows that Dr. Clausel administered a test, identified as the Wiener-Harmon Subtle Obvious Sub-scales, which showed "more overt symptom exaggeration than otherwise detected." Tr. 420. Dr. Clausel subsequently cited his testing data regarding Moore's alleged depression and his personality traits in support of this finding. *Id.* The ALJ's finding that Dr. Clausel's opinion was tainted by Moore's test results showing exaggeration is based upon the record and should be affirmed.

14 - FINDINGS AND RECOMMENDATION

Finally, the ALJ found that Dr. Clausel's November 2006 GAF analysis was likely predicated on the fact that Moore never had mental health treatment and likely would not in the future. Tr. 22. Moore correctly asserts that this reasoning is contradicted by the record showing that he engaged in mental health counseling at Blue Mountain Associates between January 12, 2007, and August 8, 2007. Pl.'s Opening Br. 21. The record supports this assertion (Tr. 452-71) and this reasoning therefore should not be sustained.

In summary, the ALJ erred in his reasoning regarding Moore's mental health counseling records in rejecting Dr. Clausel's GAF analysis. However, the ALJ's remaining reasons for rejecting Dr. Clausel's November 1, 2006, opinion are based upon the record and the correct legal standards. This court may affirm the ALJ's overall conclusion where one of the ALJ's reasons is not upheld. *Batson*, 359 F.3d at 1197. Therefore, the ALJ's assessment of Dr. Clausel's November 1, 2006, opinion should be affirmed.

### C.  Step Two Conclusion

Moore fails to establish that the ALJ made reversible errors in his step two analysis. Furthermore, because the ALJ proceeded beyond step two in the sequential analysis any step two omission is inconsequential. *See Lewis*, 498 F.3d at 911 (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). The ALJ's step two findings should therefore be affirmed for this reason also.

### III.  Lay Witness Testimony

Moore asserts that the ALJ "ignored much of the statement" submitted by his wife regarding his limitations and improperly rejected testimony submitted by Moore's daughter and ex-girlfriend. Pl.'s Opening Br. 21-22. Moore again provides no explanation for his submissions, and additionally

fails to identify the witness's names or their testimony.

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

The reviewing court may find an ALJ's omission of lay testimony harmless when it can confidently conclude that no reasonable ALJ, when fully crediting the improperly omitted testimony, would reach a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

### B.    Lay Witness Kathleen Evergreen

Moore's wife, Kathleen Evergreen, completed a third party report on August 23, 2005. Tr. 138-45.  Evergreen first wrote that she and Moore shop, read, garden, walk, cook, eat, and talk together. Tr. 138, 141.  They share cooking responsibilities, but Moore cooks "easy quick meals." Tr. 140.  Evergreen also stated that Moore occasionally cares for his granddaughter, "although he doesn't interact much." Tr. 139.  She stated that Moore no longer cares for his fish and cats, but he will walk or hunt birds with his dog. Tr. 139.  Evergreen explained that Moore has poor sleep quality, often awakes with a headache (Tr. 138-39), and needs assistance to stay focused on completing a task. Tr. 140.  Evergreen indicated that Moore walks, drives, rides in cars, and rides

a bicycle. Tr. 141. She also indicated that Moore is limited in lifting, walking, talking, hearing, and in memory, completing tasks, concentration, understanding, following instructions, using his hands, and in getting along with others. Tr. 143. Here Evergreen stated that Moore was limited in lifting due to a back injury, cannot walk far due to plantar faciitis, and has difficulty with memory and concentration due to tinnitus. *Id.* Finally, Evergreen said that she and Moore sell their produce at a local farmer's market once a week and "he likely could not do this by himself." Tr. 142.

The ALJ cited Evergreen's testimony that Moore rides a bicycle, cooks, does household chores, weeds the garden, walks, and shops for groceries, although he "can't hunt and fish as often as he used to." Tr. 26-27. The ALJ credited this testimony because it was consistent with the medical record. Tr. 27. This analysis should be affirmed.

The ALJ also found that Moore had a non-exertional communicative limitation. Tr. 23. This finding is also supported by Moore's medical records regarding his tinnitus and should be affirmed. However, lay testimony cannot establish a medically-determinable impairment. *Lewis*, 236 F.3d at 512. Because Moore has not established a mental impairment causing difficulty with memory, a back impairment, or plantar faciitis, the ALJ had no obligation to credit lay testimony describing limitations stemming from these alleged impairments.

In summary, Moore fails to show that the ALJ improperly omitted any limitation described by Evergreen. The ALJ's findings should be sustained.

### C.    Lay Witness Jennifer Moore

Moore's daughter, Jennifer Moore, wrote a letter to Moore's attorney on September 6, 2007, describing Moore's limitations. Tr. 274-75. Jennifer Moore wrote that she lives in Florida and speaks with Moore by phone every few weeks. Tr. 274. She subsequently explained that Moore

does not sleep well and has difficulty concentrating due to his tinitus, but that he can perform daily activities such as taking out the trash and dressing himself. Tr. 274-75.

The ALJ rejected Jennifer Moore's statement because it repeated Moore's allegations "verbatim" and because Jennifer Moore lives in Florida and her statement therefore has "questionable validity and evidentiary value." Tr. 27. A lay witness is competent to testify based upon her eyewitness observations of the claimant. *Doddrill*, 12 F.3d at 919. The ALJ therefore appropriately reasoned that, because Jennifer Moore could not observe Moore, her testimony had limited value. The ALJ's findings regarding Jennifer's Moore's letter should be affirmed.

### D.    Lay Witness Sandy Murphy

Moore's former girlfriend, Sandy Murphy, also sent a letter to Moore's attorney on September 10, 2007. Tr. 276-77. Murphy wrote that she was in a relationship with Moore between 1969 and 1982, and that she currently sees him "several times per year on a social basis." Tr. 276. She then stated that she has observed that Moore has difficulty hearing in social situations. Tr. 276-77.

The ALJ gave no weight to Murphy's statement because her report was vague and does not specify that she witnessed any limitations in Moore's ability to lift, carry, stand, walk, sit, interact with others, read, or focus. Tr. 27. As noted, the value of eyewitness testimony stems from the witness's observations. *Lewis*, 236 F.3d at 512. These findings are therefore affirmed. However, because Murphy described her observations of Moore's delayed response in social situations, the ALJ's finding regarding her statement and Moore's interaction with others is not based upon the proper legal standard. This error is inconsequential, however, because Moore's RFC includes a communicative limitation. The ALJ's remaining findings are based upon the record and should be

affirmed.

In summary, the ALJ's finding regarding the lay witness testimony submitted by Evergreen, Jennifer Moore, and Murphy should be affirmed.

## IV.    The ALJ's Step Four Findings

At step four, the ALJ found that Moore could perform his past relevant work as a parks technician. Tr. 28. The ALJ based this finding upon the vocational expert's testimony. Tr. 28. Moore now contends that the ALJ failed to include additional limitations in his RFC assessment, and that the ALJ's questioning to the vocational expert was therefore deficient. Pl.'s Opening Br. 22.

In making a step four or five finding which includes non-exertional limitations, the ALJ is required to propound a hypothetical to a vocational expert. *Tackett*, 180 F3d at 1101-02. This hypothetical must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F3d 1157, 1165 (9th Cir 2003).

The vocational expert testified that an individual with the Moore's RFC could perform work as parks technician. Tr. 546-47. The ALJ relied upon this testimony in finding that Moore could perform his past relevant work at step four. Tr. 28. Moore contends that this finding is flawed because the ALJ's RFC did not include additional limitations.

Moore has failed to show that the ALJ improperly assessed the medical evidence, his own testimony, or the lay testimony. Therefore, the ALJ's RFC was based upon proper consideration of the evidence. Because the ALJ's RFC was properly supported, Moore fails to show error in the ALJ's subsequent questions to the vocational expert.

Finally, Moore alleges, without explanation, that the ALJ should have found him disabled

under the Commissioner's medical-vocational guidelines, or "grids." Pl.'s Opening Br. 22. The ALJ

may not rely upon the grids when a claimant has a non-exertional impairment. *Tackett*, 180 F.3d at

1102.   The ALJ presently found that Moore has a communicative limitation stemming from his

tinnitus, which is a non-exertional impairment.   Tr. 28.   The ALJ was therefore precluded from

relying upon the grids.   This submission should be rejected.

       In summary, the ALJ properly found that Moore could perform his past relevant work at step

four in the sequential proceedings.   The ALJ therefore properly found Moore not disabled under the

Commissioner's regulations.

## CONCLUSION AND RECOMMENDATION

       The ALJ's decision is based upon the appropriate legal standards and substantial evidence.

The ALJ's decision should therefore be AFFIRMED.

       The above Findings and Recommendation are referred to a United States District Judge for

review.   Objections, if any, are due fourteen days after the date this order is filed.   If no objections

are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the

objections are filed. Review of the Findings and Recommendation will go under advisement when

the response is due or filed, whichever date is earlier.

       IT IS SO ORDERED.

       DATED this ⟩⟩ day of January, 2010.

                                          _____
                                          Thomas M. Coffin
                                          United States Magistrate Judge